IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Raymond A. Bivings, ) | |
| ) | CA No. 6:11-518-TMC |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Greenville Technical College, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

      Plaintiff Raymond A. Bivings (Bivings) filed this complaint against Greenville Technical College (Greenville Tech), alleging various civil rights violations. (Dkt. No. 1.) This matter is before the court for review of the Report and Recommendation (Report) of the United States magistrate judge made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 of the District of South Carolina. (Dkt. No. 39.)[1] The Report recommends granting the defendant's motion for summary judgment. (Dkt. No. 22.) The court adopts the Report and grants the defendant's motion for summary judgment.

**I.**

      The Report adequately sets out the facts and procedural history, and the court incorporates the Report here. (Dkt. No. 39.) As detailed in the Report, Biving's allegations arise from his application for a position with Greenville Tech. Greenville Tech advertised an opening for a carpentry instruction position with the following job requirements:

      An associate degree in a construction related field and three years of full-time work

---

[1] The magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

> experience in construction or a high school diploma and five years of full-time work experience in construction. S/he must have the ability to communicate and teach students the knowledge of the Carpentry trades and tools. S/he must have hands-on experience and be able to operate all equipment used in normal Carpentry. Prefer working knowledge of Datatel and/or teaching experience.

The advertisement also outlined the general responsibilities:

> Faculty will teach all students the working knowledge and skills to be a professional carpenter. S/he will prepare and present material at a pace that will foster student understanding and will, at the same time, permit coverage of vital concepts. S/he will advise students and participate in departmental, divisional, and campus committee work. S/he will maintain competence through continuous professional development. S/he will meet deadlines for record keeping; maintain scheduled office hours and follow guidelines set forth in the faculty manual. S/he will perform other tasks independently as needed.

Bivings, an African-American male and experienced carpenter, applied for the position, along with a number of other individuals. Greenville Tech formed a hiring committee, composed of a number of individuals to review the applications.[2] The committee interviewed five individuals, including Bivings. Apparently, Bivings' interview was unimpressive. The members of the committee were concerned that Bivings would be unable to perform the duties of the position, including communicating and teaching students at a college level. Following its assessment, the hiring committee recommended hiring someone other than Bivings.[3]

Following his rejection, Bivings filed a complaint with the Equal Employment Opportunity Commission (EECO) and ultimately in the Greenville County Court of Common Pleas.[4] In his complaint, he alleged race discrimination pursuant to the South Carolina Human

---

[2] The hiring committee was composed of employees from several different departments and included male, female, and minority representation.

[3] The committee voted unanimously to hire the eventual hiree, who was ultimately chosen following an interview with an associate dean and dean at Greenville Tech.

[4] In his EEOC complaint, Bivings alleged that he was discriminated against "because of my race, Black." He also alleged that his qualifications were "far superior to the White male who was selected for the position."

Affairs Act (SCHAA), Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981.[5] Greenville Tech removed the action to this court. (Dkt. No. 1.) Subsequently, Greeenville Tech filed a motion for summary judgment. (Dkt. No. 22.)

The magistrate judge filed the Report on March 19, 2012. (Dkt. No. 39.) In the Report, the magistrate judge recommended granting Greenville Tech's motion for summary judgment. In a very well-written and reasoned Report, the magistrate judge recommended finding that Bivings failed to demonstrate a genuine issue of material fact as to (1) whether Greenville Tech's actions were motivated by racial discrimination; and (2) whether Bivings was better qualified than the eventual hiree such that an inference of discrimination may be rationally drawn.

Bivings timely filed objections to the Report. (Dkt. No. 42.) Specifically, Bivings argues that the magistrate judge erred in finding no demonstrated racial animus. Secondly, he argues that the magistrate judge erred in finding that the eventual hiree was qualified according to the requirements listed in the job advertisement. As detailed below, the court finds both of these objections unpersuasive and adopts the recommendations of the magistrate judge.

## II.

Under the Federal Rules of Civil Procedure, this court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56, Fed. R. Civ. P. A fact is material if proof of its existence or non-existence would affect the disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Of course, all inferences and ambiguities must be drawn in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

---

[5] As noted in the Report, Bivings has conceded that his SCHAA and § 1981 claims were barred by the statute of limitations.

The moving party must initially shoulder the burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the non-moving party may not rest on the allegations made in his pleadings but must instead demonstrate specific, material facts that exist to raise a genuine issue. *Id*. at 324. Further, conclusory allegations or denials, without more, are insufficient to preclude granting a motion for summary judgment. *Ross v. Commc'ns Satellite Corp*., 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

## III.

Under Title VII of the Civil Rights Act of 1964, it is "an unlawful employment practice for an employer to . . . fail or refuse to hire . . . any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e–2(a)(1); *see also id.* § 2000e-2(m) ("[A]n unlawful employment practice is established when the complaining party demonstrates that race . . . was a motivating factor for any employment practice, even though other factors also motivated the practice."). To survive a motion for summary judgment in a Title VII case, a plaintiff may pursue two avenues of proof:

> First, a plaintiff may establish a claim of discrimination by demonstrating through direct or circumstantial evidence that . . . discrimination motivated the employer's adverse employment decision.
>
>  . . . .
>
> The second method of averting summary judgment is to proceed under a 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination.

*Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 284–285 (4th Cir. 2004).

**A.**

At the outset, the court will address whether Bivings has established, through direct or circumstantial evidence, that racial discrimination motivated Greenville Tech's decision not to hire him. The court holds that Bivings has not done so.

As stated above, "a plaintiff may establish a claim of discrimination by demonstrating through direct or circumstantial evidence that . . . discrimination motivated the employer's adverse employment decision." Direct evidence is evidence that the employer "announced, admitted, or otherwise indicated that the [racial animus] was a determining factor . . . ." *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 485 (4th Cir. 1982) (citing *Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109, 1113 (4th Cir. 1981)). Direct evidence is also "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). Circumstantial evidence is evidence that may include but is "not limited to proof of the claimant's general qualifications, from which the inference of . . . discrimination may rationally be drawn independently of any presumption" of discrimination. *Cline*, 689 F.2d at 485. In essence, the plaintiff need only show, by a preponderance of the evidence, that some impermissible factor was a motivating factor in the decision not to hire. *Desert Palace*, 539 U.S. at 101–02.

Here, Bivings asserts direct evidence of racial animus in the form of the alleged use of a racial epithet. Specifically, Bivings alleges that Jay Pearson (Pearson), the department head for the Building Construction Technology Department and a member of the hiring committee, used the "N" word in his presence in a way that made Bivings believe that Pearson exhibited racial animus

and did not want Bivings to apply for the position. However, a review of the evidence in this case does not support Bivings' assertions. Bivings' own deposition testimony is as follows:

> Q: What facts do you have that Jay Pearson acted based on your race?
>
> A: Well, I think I hear them [sic] use the "N" word before and as if he didn't -- as if he didn't want me to apply for the job or something by using that.
>
> Q: When did you hear that word used?
>
> A: It was -- let's see. It was one day I had went down to talk to them. I don't remember the exact date.
>
> Q: What year?
>
> A: It was in – sometime in '06.
>
> . . .
>
> Q: And what was the topic of discussion?
>
> A: We were talking about -- he started talking about – we started talking about where I lived at one point. I lived in a place called Sunnyside in Greer. And he said he lived in the Victor Mill area. And they used to throw rocks at us in [sic] holler the "N" word at us. And I remembered it, but I didn't remember him. I think I said, "I didn't know you lived up there when that used to happen." And I remembered it – I remembered it happening, so apparently he must have known me when we were younger.
>
> Q: "He" being Jay Pearson?
>
> A: Yes.
>
> Q: So how did that come up in discussion when you're talking about where you both lived growing up?
>
> A: He just brought it up after we -- I don't know.
>
> Q: What did he say?
>
> A: It was something about Sunnyside . . . . And I can't remember exactly how it came up. I just barely remember the words he used.
>
> Q: So you're testifying that you and Jay Pearson were discussing where you grew up?

> A:   Where we grew up.
>
> Q:   Where he grew up and where you grew up. And he used the "N" word in that conversation?
>
> A:   Yes.

This deposition testimony does not support Bivings' assertion that Pearson's alleged use of the "N" word was directed towards Bivings in regards to the open position. Bivings could not remember the timing of the alleged statement—if it occurred before, during, or after the hiring process—or if it was even related to the hiring decision at all. Nothing in Bivings' recitation indicates that Pearson directed the epithet at Bivings in any manner; it appears from the testimony that Pearson was recounting his and others' use of the epithet in the past.[6] Furthermore, as noted by the magistrate judge, Bivings testified that he was unsure why Pearson decided not to hire him and could not definitively say that the decision was related to Pearson's use of the racial epithet. Plainly, nothing in the testimony legitimately supports the conclusion that the epithet or conversation wherein it allegedly occurred was related to the carpentry position. *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 300 (4th Cir. 2010) (stating that without a clear nexus between remark and employment decision, a plaintiff fails to demonstrate materiality); *see also EEOC v. Clay Printing Co.*, 955 F.2d 936, 942 (4th Cir. 1994) (stating that remote statements not related to any hiring decision are not direct evidence of discrimination).[7]

---

[6]   As the magistrate judge noted, Bivings did not report this incident to anyone prior to disclosing it to his attorney just before the deposition, did not include this allegation in his EEOC complaint, and did not make this assertion in his civil complaint or responses to discovery requests.

[7]   Furthermore, even if the remark were directed to Bivings in connection to the open position, Bivings has not sufficiently established that Pearson exercised sufficient control over the hiring process such that any of his remarks should be construed to Greenville Tech. The record establishes that a five-person hiring committee made a recommendation to the associate dean, who in turn made a recommendation to the dean. The dean and associate dean interviewed the eventual hiree and offered the job. *See Hill*, 354 F.3d at 288–89 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151–52 (2000)) (stating that while "[t]he person allegedly acting pursuant to a

The court will now turn to circumstantial evidence. Bivings alleges that Greenville Tech's hiring of an applicant of another race, who was allegedly less qualified than Bivings, constitutes circumstantial evidence from which an inference of discrimination may be rationally drawn. The court disagrees.

The Report thoroughly discusses this allegation in detail, but in essence, Bivings was not adequately qualified for the position, while the eventual hiree was. As stated above, the job description listed the qualifications necessary for the open carpentry position:

> An associate degree in a construction related field and three years of full-time work experience in construction or a high school diploma and five years of full-time work experience in construction. S/he must have the ability to communicate and teach students the knowledge of the Carpentry trades and tools. S/he must have hands-on experience and be able to operate all equipment used in normal Carpentry. Prefer working knowledge of Datatel and/or teaching experience.

The job description also outlined the general responsibilities:

> Faculty will teach all students the working knowledge and skills to be a professional carpenter. S/he will prepare and present material at a pace that will foster student understanding and will, at the same time, permit coverage of vital concepts. S/he will advise students and participate in departmental, divisional, and campus committee work. S/he will maintain competence through continuous professional development. S/he will meet deadlines for record keeping; maintain scheduled office hours and follow guidelines set forth in the faculty manual. S/he will perform other tasks independently as needed.

While Bivings met most of the qualifications, the hiring committee was concerned that he had no college level teaching experience and no experience with the preferred software program. Furthermore, the hiring committee members expressed concern that Bivings would be able to perform duties of position, particularly the ability to communicate with and teach college students. The court notes, as Bivings does, that the description does not require college-level teaching

---

discriminatory animus need not be 'the formal decisionmaker' to impose liability upon an employer for an adverse employment action . . ." the plaintiff must prove that "the subordinate was the one 'principally responsible for, or the 'actual decisionmaker' behind, the action"); *see also Merritt*, 601 F.3d at 300 ("It is the decision maker's intent that remains crucial . . . .").

experience but mere teaching experience. Even accepting proposition that any sort of teaching experience meets the job requirement, the hiring committee was not persuaded that Bivings would be able to teach and communicate with college students—which is an express requirement in the job description.

By way of contrast, the eventual hiree met all qualifications: he had the requisite construction and carpentry experience, college-level teaching experience (at Greenville Tech), experience with the preferred software program, and, in the minds of the committee members, the ability to communicate and teach college students. Furthermore, the hiring committee was particularly impressed at the interview with his level of preparedness and teaching experience at Greenville Tech. While Bivings may earnestly believe that his qualifications were better than those of the eventual hiree, the decision maker's assessment of an applicant's qualifications (in this case, the assessment by the hiring committee) is what matters—not the applicant's necessarily biased self-assessment of his qualifications. *Evans v. Techs. Applications & Serv. Co.* 80 F.3d 954, 960–61 (4th Cir. 1996). Accordingly, the court holds that Bivings has not put forth either direct or circumstantial evidence to support a rational inference that the decision was based upon discrimination.

## B.

As the magistrate judge noted in the Report, Bivings does not clearly identify which avenue of proof he is pursuing. To the extent that his complaint could be construed as an attempt to pursue the pretext avenue of proof, the court holds that he has failed to establish that the decision not to hire him was a pretext for discrimination.

To proceed under the pretext framework, the applicant must prove a prima facie case of

discrimination and then demonstrate that the "employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285 (citing *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 252 – 53 (1981)).

> To establish a prima facie case of discrimination in a pretext case, the plaintiff must show
>
> (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Hill*, 354 F.3d at 285 (citing *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 606–07 (4th Cir. 1999)). As outlined in Subsection A, *supra*, the court finds that Bivings did not meet the qualifications for the position. Therefore, he cannot establish a prima facie case of discrimination. Accordingly, he may not proceed under the pretext avenue of proof.

## C.

Though the court finds that Bivings has failed to put forth evidence under either avenue of proof, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves,* 530 U.S. at 153. As the Fourth Circuit has held, "To demonstrate such an intent to discriminate on the part of the employer, an individual alleging disparate treatment based upon a protected trait must produce sufficient evidence upon which one could find that 'the protected trait . . . actually motivated the employer's decision.'" *Hill*, 354 F.3d at 286 (citing *Reeves*, 530 U.S. at 141); *see also id.* at 286 ("The protected trait must have actually played a role in the employer's decision making process and had a determinative influence on the outcome."). The court finds that Bivings has

failed to demonstrate that he was the victim of intentional race discrimination. Accordingly, the court holds that summary judgment is appropriate.

## III.

After a thorough review of the Report and the record in this case, the court adopts the Report and incorporates it herein. (Dkt. No. 39.) Accepting the evidence in a light most favorable to the plaintiff, he has failed to demonstrate a genuine issue of material fact that Greenville Tech's hiring decision was motivated by racial animus. It is therefore **ORDERED** that the motion for summary judgment (Dkt. No. 22) is **GRANTED**. In light of this order, Greenville Tech's motion in limine is hereby **DENIED** as **MOOT**. (Dkt. No. 37.)

**IT IS SO ORDERED.**

<u>s/Timothy M. Cain</u>
Timothy M. Cain
United States District Judge

Greenville, South Carolina
July 9, 2012


**NOTICE OF RIGHT TO APPEAL**

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.